# EXHIBIT A

Electronically FILED by Superior Court of California, County of Los Angeles on 07/06/2020 01:33 PM Sherri R. Carter, Executive Officer/Clerk of Court, by H. Flores-Hernandez,Deputy Clerk
20STCV25262

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY |
| --- | --- |
| | *(SOLO PARA USO DE LA CORTE)* |

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

DEVA CONCEPTS, LLC, a Delaware Limited Liability Company doing business as DevaCurl, and DOES 1 through 100, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

ALEXA BATES, EMINA ABDAGIC, GABRIELLA AGUILERA,
(Additional Parties Attachment form is attached)

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: | CASE NUMBER: |
| --- | --- |
| *(El nombre y dirección de la corte es):* Los Angeles Superior Court | *(Número del Caso):* |
| 111 N. Hill Street, Los Angeles, CA 90012 | 20STCV25262 |
| Stanley Mosk Courthouse - Central | |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Randi R. Geffner, ESENSTEN LAW, 12100 Wilshire Blvd., #1660, Los Angeles CA 90025; 310-273-3090

| DATE: July 2, 2020 | 07/06/2020 | Clerk, by | Sherri R. Carter Executive Officer / Clerk of Court | , Deputy |
| --- | --- | --- | --- | --- |
| *(Fecha)* | | *(Secretario)* | H. Flores-Hernandez | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):* Deva Concepts LLC

under: ☐ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
☐ other *(specify):* LLC
4. ☑ by personal delivery on *(date):* 7/8/2020

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]
**SUMMONS**
Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

Exhibit A

SUM-200(A)

| SHORT TITLE:<br>Alexa Bates, et al. v. Deva Concepts, LLC, et al. | CASE NUMBER:<br>20STCV25262 |
| --- | --- |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.):*

[ ] Plaintiff    [✓] Defendant    [ ] Cross-Complainant    [ ] Cross-Defendant

YAZMIN ALI, TERRA ANGLIN, ASHLEY ARACENA, ROBYN ARLAN, TRACI BATES, ELIZABETH BRUSS, LUCY ANN BURKE, CHRISTINA CALA, YENNIFER CAMPOS, SUSAN CHEYNE, MOLLY CLARK, CHLOE CORNELL, KIMBERLY COUTURE, DEAN DAMON, ESTHER EPSTEIN, MARIANA GOES, KIM GRAHAM, ROSEANNA GREGA, WENDY GREGORY, DIANA HASROUNI, NATASHA HOBSON, DONNA HUGHES, GIANNA IMBRONONE, NATALIE KIKKENBORG, RHONDA KOEHLER, KRISTINA LANE, JEANNE LASHMETT, JULIA LEHNEN, VICKIE LEWIS, JENNIFER LONGBINE, FELICIA MONTANO, NARAYANA MONTUFAR, MARIA GUADALUPE MORA, NICOLE MUSCARELLA, GIGI OLIVER, ELIANA PALMA, KRISTEN PEDLEY, CHRISTINA PIERRE, MICHELLE PHARES, LAUREN RACUSIN, SARAH RASHID, EMMANUEL REGISTER, MARITZA RIVERA, CARMEN ROSA, ANNYOCELI SANTIAGO, KAALAN SCHAEFFER, CANDACE STIMSON, MARYAM TEHRANIE, SUZANNE TILLOTSON, MEGAN TRAMA, JEANETTE TRAVIS, STELLA WARDA, SHIRLEY WEISS, JENNIFER WHITCOMB, JILLIE WILLIAMS, AMANDA WILSON,

Page _____ of _____

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

Exhibit A

Electronically FILED by Superior Court of California, County of Los Angeles on 07/06/2020 01:33 PM Sherri R. Carter, Executive Officer/Clerk of Court, by H. Flores-Hernandez,Deputy Clerk
20STCV25262

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Laura Seigle

ROBERT L. ESENSTEN (Bar No. 65728)
    resensten@esenstenlaw.com
RANDI R. GEFFNER (Bar No. 116574)
    rgeffner@esenstenlaw.com
**ESENSTEN LAW**
12100 Wilshire Boulevard, Suite 1660
Los Angeles, California 90025
Telephone:  (310) 273-3090
Facsimile:   (310) 207-5969

Attorneys for Plaintiffs

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

ALEXA BATES, EMINA ABDAGIC, GABRIELLA AGUILERA, YAZMIN ALI, TERRA ANGLIN, ASHLEY ARACENA, ROBYN ARLAN, TRACI BATES, ELIZABETH BRUSS, LUCY ANN BURKE, CHRISTINA CALA, YENNIFER CAMPOS, SUSAN CHEYNE, MOLLY CLARK, CHLOE CORNELL, KIMBERLY COUTURE, DEAN DAMON, ESTHER EPSTEIN, MARIANA GOES, KIM GRAHAM, ROSEANNA GREGA, WENDY GREGORY, DIANA HASROUNI, NATASHA HOBSON, DONNA HUGHES, GIANNA IMBRONONE, NATALIE KIKKENBORG, RHONDA KOEHLER, KRISTINA LANE, JEANNE LASHMETT, JULIA LEHNEN, VICKIE LEWIS, JENNIFER LONGBINE, FELICIA MONTANO, NARAYANA MONTUFAR, MARIA GUADALUPE MORA, NICOLE MUSCARELLA, GIGI OLIVER, ELIANA PALMA, KRISTEN PEDLEY, CHRISTINA PIERRE, MICHELLE PHARES, LAUREN RACUSIN, SARAH RASHID, EMMANUEL REGISTER, MARITZA

CASE NO.   20STCV25262

**COMPLAINT FOR:**

1.  NEGLIGENCE
2.  STRICT PRODUCT LIABILITY--DESIGN DEFECT
3.  STRICT PRODUCT LIABILITY--FAILURE TO WARN
4.  NEGLIGENT PRODUCT LIABILITY
5.  BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
6.  BREACH OF EXPRESS WARRANTY
7.  VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW

ESENSTEN LAW

1
COMPLAINT

Exhibit A

1  RIVERA, CARMEN ROSA,
2  ANNYOCELI SANTIAGO, KAALAN
   SCHAEFFER, CANDACE STIMSON,
3  MARYAM TEHRANIE, SUZANNE
   TILLOTSON, MEGAN TRAMA,
4  JEANETTE TRAVIS, STELLA
5  WARDA, SHIRLEY WEISS,
   JENNIFER WHITCOMB, JILLIE
6  WILLIAMS, AMANDA WILSON,

7           Plaintiffs,

8       vs.
9
10  DEVA CONCEPTS, LLC, a Delaware
    Limited Liability Company doing
11  business as DevaCurl, and DOES 1
    through 100, inclusive,
12
13          Defendants.

14

15      Plaintiffs ALEXA BATES, EMINA ABDAGIC, GABRIELLA AGUILERA,

16  YAZMIN ALI, TERRA ANGLIN, ASHLEY ARACENA, ROBYN ARLAN, TRACI

17  BATES, ELIZABETH BRUSS, LUCY ANN BURKE, CHRISTINA CALA, YENNIFER

18  CAMPOS, SUSAN CHEYNE, MOLLY CLARK, CHLOE CORNELL, KIMBERLY

19  COUTURE, DEAN DAMON, ESTHER EPSTEIN, MARIANA GOES, KIM GRAHAM,

20  ROSEANNA GREGA, WENDY GREGORY, DIANA HASROUNI, NATASHA

21  HOBSON, DONNA HUGHES, GIANNA IMBRONONE, NATALIE KIKKENBORG,

22  RHONDA KOEHLER, KRISTINA LANE, JEANNE LASHMETT, JULIA LEHNEN,

23  VICKIE LEWIS, JENNIFER LONGBINE, FELICIA MONTANO, NARAYANA

24  MONTUFAR, MARIA GUADALUPE MORA, NICOLE MUSCARELLA, GIGI

25  OLIVER, ELIANA PALMA, KRISTEN PEDLEY, CHRISTINA PIERRE, MICHELLE

26  PHARES, LAUREN RACUSIN, SARAH RASHID, EMMANUEL REGISTER,

27  MARITZA RIVERA, CARMEN ROSA, ANNYOCELI SANTIAGO, KAALAN

28  SCHAEFFER, CANDACE STIMSON, MARYAM TEHRANIE, SUZANNE

ESENSTEN LAW

Exhibit A

1 TILLOTSON, MEGAN TRAMA, JEANETTE TRAVIS, STELLA WARDA, SHIRLEY

2 WEISS, JENNIFER WHITCOMB, JILLIE WILLIAMS, and AMANDA WILSON

3 (collectively "Plaintiffs" except where necessary to identify any Plaintiff individually), and

4 each of them, complain and allege against Defendants DEVA CONCEPTS, LLC, a

5 Delaware Limited Liability Company doing business as DevaCurl ("DevaCurl" and/or

6 "Defendant"), and DOES 1 through 100, inclusive (Defendants may be referred to

7 collectively as "Defendants" except where necessary to identify any Defendant

8 individually) as follows:

9

10                                   **COMMON ALLEGATIONS**

11

12        1.      Upon information and belief, at all times herein relevant, Defendant

13 Defendants DEVA CONCEPTS, LLC, a Delaware Limited Liability Company doing

14 business as DevaCurl ("DevaCurl") was and is authorized to conduct business and

15 conducting business throughout the State of California, including but not limited to the

16 County of Los Angeles, with its principal place of business in the City of New York, State

17 of New York.

18        2.      Upon information and belief, at all times herein relevant, DevaCurl designed,

19 manufactured, marketed, sold and distributed hair care products in various varieties

20 including, but not limited to, DevaCurl No-Poo Original hair conditioning cleanser,

21 DevaCurl One Condition® Original  hair conditioner, DevaCurl One Condition® Delight

22 hair conditioner, DevaCurl One Condition® Decadence hair conditioner, DevaCurl Ultra

23 Defining Gel, DevaCurl Light Defining Gel, Deva-Curl Low-Poo Original hair cleanser,

24 DevaCurl Low-Poo Delight hair cleanser, DevaCurl No-Poo Decadence hair cleanser,

25 DevaCurl Leave-In Decadence hair conditioner, Wavemaker, Melt Into Moisture Mask,

26 Styling Cream, and other products (collectively the "Products") in the regular course of

27 business.  DevaCurl directly or indirectly marketed, sold and/or distributed one or more of

28 the formulations of the Products to each Plaintiff herein.

_ESENSTEN LAW_

---

3
COMPLAINT

3.      Plaintiffs are unaware of the true names and capacities of the Defendants sued herein as DOES 1 through 100, inclusive.  Plaintiffs are informed and believe that each of said fictitiously named Defendants is responsible for the injuries and damages to Plaintiffs as alleged herein.  Plaintiffs are informed and believe and based thereon allege that all Defendants acted jointly in the design, manufacture, marketing, sale and distribution of the Products.  Plaintiffs will seek leave of Court to amend this Complaint at such time as the true names and capacities of said fictitiously named Defendants are known to them.

4.      Plaintiffs are all consumers who purchased, used, were exposed to and were injured by their use of the Products.  The Products are home hair care products formulated, manufactured, advertised, marketed, sold and distributed by Defendants for use by consumers at home and also used by Defendants on consumers in their salons nationwide.

5.      Plaintiffs, and each of them, purchased and used the Products based on multiple false and/or misleading representations made by Defendants, and each of them, communicated to Plaintiffs and other customers through the labeling of the products, the use of television advertising, print advertising, internet advertising, representations on Defendants' websites, and by other means.  The false and/or misleading representations include, but are not limited to, the following:

    a.      That the Products are innovative alternatives to traditional shampoo;

    b.      That the Products are free of sulfates, silicones and parabens;

    c.      That the Products are free of harsh ingredients;

    d.      That the Products allow the user's hair to become "more of what nature intended";

    e.      That the Products would not dry out then user's curls;

    f.      That the Products are gentle cleansers for curls that would not strip the natural oils necessary for healthy, bouncy curls;

    g.      That the Products can be used "as often as needed";

    h.      That the No-Poo Product specifically gives the "curls what they need and

Exhibit A

1 | nothing they don't";

2 |     i.    That all of the Products help curls "look and feel healthy, conditioned, soft,
3 | defined, shiny, and frizz-free"; and

4 |     j.    That the Products are tested to "validate every product for quality, safety and
5 | performance".

6 |     6.    Contrary to the false and/or misleading representations made by Defendants,
7 | normal use of the Products has caused Plaintiffs and other consumers severe injuries and
8 | damages such as, but not limited to hair loss, excessive shedding, thinning of hair, scalp
9 | irritation, hair breakage, frizzing, disruption of the natural curl pattern, and other types of
10 | damage to their hair and scalp. In addition, Plaintiffs have experienced severe mental and
11 | emotional injuries directly arising from the damages to their hair and scalp, including but
12 | not limited to depression, embarrassment, loss of self-esteem, and other types of damage.

13 |     7.    Defendants have failed to warn Plaintiffs and other consumers about the
14 | adverse consequences of normal use of the Products. In fact, DevaCurl's own website
15 | intentionally discounts and disclaims hair loss and shedding, both claiming that those
16 | results are normal and also by blaming those damaging results on other factors unrelated to
17 | their Products[1]. The effect of this is to cause Plaintiffs and other consumers to feel that
18 | they are to blame for the hair and scalp damages caused by the Products.

19 |     8.    Plaintiff ALEXA BATES used the Products until approximately February,
20 | 2020. She relied on the labeling, marketing and advertising of the Products by Defendants
21 | in making her decisions to purchase and use the Products. She used the Products and as a
22 | result thereof experienced hair loss, hair breakage, poor hair condition, hair thinning, bald
23 | spots, change in curl pattern, and scalp irritation, resulting in emotional distress,
24 | embarrassment, loss of self-esteem, relationship issues and an unwanted change in

25 |

26 | [1] On its website, www.devacurl.com , DevaCurl acknowledges the reports of hair damage
and scalp irritation caused by the Products yet nonetheless has not recalled the Products or
27 | provided any warnings of the known risks associated therewith.

28 |

Exhibit A

ESENSTEN LAW

1  appearance.

2       9.      Plaintiff EMINA ABDAGIC used the Products until approximately 2017.

3  She relied on the marketing and advertising of the Products by Defendants in making her

4  decisions to purchase.  She used the Products and as a result thereof experienced poor hair

5  condition, scalp irritation, embarrassment, and an unwanted change in her appearance.

6       10.     Plaintiff GABRIELLA AGUILERA used the Products until approximately

7  December 2019.  She relied on the marketing and advertising of the Products by

8  Defendants in making her decisions to purchase.  She used the Products and as a result

9  thereof experienced hair loss, hair breakage, poor hair condition, hair thinning, bald spots,

10  change in curl pattern, and scalp irritation, resulting in emotional distress, embarrassment,

11  loss of self-esteem, social and relationship issues, and an unwanted change in her

12  appearance.

13       11.     Plaintiff YAZMIN ALI used the Products until approximately March 2020.

14  She relied on the marketing and advertising of the Products by Defendants in making her

15  decisions to purchase.  She used the Products and as a result thereof experienced hair loss,

16  hair breakage, poor hair condition, hair thinning, bald spots, change in curl pattern, and

17  scalp irritation, resulting in emotional distress, embarrassment, loss of self-esteem,

18  relationship issues and an unwanted change in appearance.

19       12.     Plaintiff TERRA ANGLIN used the Products until approximately February

20  2020.  She relied on the marketing and advertising of the Products by Defendants in

21  making her decisions to purchase.  She used the Products and as a result thereof

22  experienced hair loss, hair breakage, poor hair condition, hair thinning, bald spots, change

23  in curl pattern, and scalp irritation, resulting in emotional distress, embarrassment, loss of

24  self-esteem, relationship issues and an unwanted change in appearance.

25       13.     Plaintiff ASHLEY ARACENA used the Products until approximately

26  February 2020.  She relied on the marketing and advertising of the Products by Defendants

27  in making her decisions to purchase.  She used the Products and as a result thereof

28  experienced hair loss, bald spots, poor hair condition, hair thinning, and change in curl

ESENSTEN LAW

6
COMPLAINT

Exhibit A

1   pattern, resulting in emotional distress, embarrassment, loss of self-esteem and an

2   unwanted change in appearance.

3       14.    Plaintiff ROBYN ARLAN used the Products until approximately May 2020.

4   She relied on the marketing and advertising of the Products by Defendants in making her

5   decisions to purchase. She used the Products and as a result thereof experienced hair loss,

6   hair breakage, hair thinning, change in curl pattern and bald spots, resulting in emotional

7   distress.

8       15.    Plaintiff TRACI BATES used the Products until approximately March 2020.

9   She relied on the marketing and advertising of the Products by Defendants in making her

10  decisions to purchase. She used the Products and as a result thereof experienced hair loss,

11  hair breakage, poor hair condition, hair thinning, bald spots, hair breakage, and change in

12  curl pattern, resulting in emotional distress, embarrassment, loss of self-esteem,

13  relationship and social issues, and an unwanted change in appearance.

14      16.    Plaintiff ELIZABETH BRUSS used the Products until approximately April,

15  2020. She relied on the marketing and advertising of the Products by Defendants in

16  making her decisions to purchase. She used the Products and as a result thereof

17  experienced hair loss, bald spots, hair thinning, change in curl pattern and scalp irritation,

18  resulting in emotional distress.

19      17.    Plaintiff LUCY ANN BURKE used the Products until approximately June,

20  2020. She relied on the marketing and advertising of the Products by Defendants in

21  making her decisions to purchase. She used the Products and as a result thereof

22  experienced hair loss, hair breakage, poor hair condition, hair thinning, bald spots, change

23  in curl pattern, and scalp irritation, resulting in emotional distress, embarrassment, loss of

24  self-esteem, relationship issues and an unwanted change in appearance.

25      18.    Plaintiff CHRISTINA CALA used the Products until approximately April

26  2020. She relied on the marketing and advertising of the Products by Defendants in

27  making her decisions to purchase. She used the Products and as a result thereof

28  experienced hair loss, hair breakage, poor hair condition, hair thinning, bald spots, change

ESENSTEN LAW

7
COMPLAINT

Exhibit A

1 | in curl pattern, scalp irritation, and hair shedding, resulting in emotional distress,
2 | embarrassment, loss of self-esteem, relationship issues and an unwanted change in
3 | appearance.

4 |      19.    Plaintiff YENNIFER CAMPOS used the Products until approximately
5 | January 2020. She relied on the marketing and advertising of the Products by Defendants
6 | in making her decisions to purchase. She used the Products and as a result thereof
7 | experienced hair loss, hair breakage, poor hair condition, hair thinning, change in curl
8 | pattern, and scalp irritation, resulting in emotional distress, embarrassment, loss of self-
9 | esteem, and an unwanted change in appearance.

10 |      20.    Plaintiff SUSAN CHEYNE used the Products until approximately May
11 | 2020. She relied on the marketing and advertising of the Products by Defendants in
12 | making her decisions to purchase. She used the Products and as a result thereof
13 | experienced hair loss, hair breakage, hair thinning, change in curl pattern, and bald spots,
14 | resulting in an unwanted change in appearance.

15 |      21.    Plaintiff MOLLY CLARK used the Products until approximately April 2020.
16 | She relied on the marketing and advertising of the Products by Defendants in making her
17 | decisions to purchase. She used the Products and as a result thereof experienced hair loss,
18 | hair breakage, poor hair condition, hair thinning, bald spots and change in curl pattern,
19 | resulting in embarrassment, loss of self-esteem and an unwanted change in appearance.

20 |      22.    Plaintiff CHLOE CORNELL used the Products until approximately February
21 | 2020. She relied on the marketing and advertising of the Products by Defendants in
22 | making her decisions to purchase. She used the Products and as a result thereof
23 | experienced hair loss, hair breakage, poor hair condition, hair thinning, bald spots, change
24 | in curl pattern, and scalp irritation resulting in emotional distress, embarrassment, loss of
25 | self-esteem, social and relationship issues, and an unwanted change in appearance.

26 |      23.    Plaintiff KIMBERLY COUTURE used the Products until approximately
27 | February 2020. She relied on the marketing and advertising of the Products by Defendants
28 | in making her decisions to purchase. She used the Products and as a result thereof

ESENSTEN LAW

Exhibit A

1   experienced hair loss, hair breakage, poor hair condition, hair thinning, bald spots, change

2   in curl pattern and scalp irritation, resulting in emotional distress, embarrassment, loss of

3   self-esteem, hopeless feeling, and an unwanted change in appearance.

4       24.    Plaintiff DEAN DAMON used the Products until approximately May 2020.

5   He relied on the marketing and advertising of the Products by Defendants in making his

6   decisions to purchase.  He used the Products and as a result thereof experienced hair loss,

7   hair breakage, poor hair condition, hair thinning, change in hairline, change in curl pattern,

8   and scalp irritation, resulting in embarrassment, loss of self-esteem, relationship issues and

9   an unwanted change in appearance.

10       25.    Plaintiff ESTHER EPSTEIN used the Products until approximately early

11   2020.  She relied on the marketing and advertising of the Products by Defendants in

12   making her decisions to purchase.  She used the Products and as a result thereof

13   experienced hair loss, poor hair condition, hair thinning, bald spots, scalp irritation, and

14   change in curl pattern, resulting in emotional distress, embarrassment, loss of self-esteem,

15   relationship issues, and an unwanted change in appearance.

16       26.    Plaintiff MARIANA GOES used the Products until approximately April

17   2020.  She relied on the marketing and advertising of the Products by Defendants in

18   making her decisions to purchase.  She used the Products and as a result thereof

19   experienced hair loss, poor hair condition, hair thinning, and change in curl pattern,

20   resulting in emotional distress, embarrassment, loss of self-esteem, and an unwanted

21   change in appearance.

22       27.    Plaintiff KIM GRAHAM used the Products until approximately February

23   2020.  She relied on the marketing and advertising of the Products by Defendants in

24   making her decisions to purchase.  She used the Products and as a result thereof

25   experienced hair loss, poor hair condition, hair thinning, balding, scalp irritation, and

26   change in curl pattern, resulting in emotional distress, embarrassment, loss of self-esteem,

27   and an unwanted change in appearance.

28       28.    Plaintiff ROSEANNA GREGA used the Products until approximately May

ESENSTEN LAW

9
COMPLAINT

Exhibit A

1  2020.  She relied on the marketing and advertising of the Products by Defendants in

2  making her decisions to purchase.  She used the Products and as a result thereof

3  experienced hair thinning, hair loss, and change in curl pattern, resulting in embarrassment.

4        29.    Plaintiff WENDY GREGORY used the Products until approximately May

5  2020.  She relied on the marketing and advertising of the Products by Defendants in

6  making her decisions to purchase.  She used the Products and as a result thereof

7  experienced hair loss, hair breakage, poor hair condition, hair thinning, change in curl

8  pattern, and scalp irritation, resulting in emotional distress, embarrassment, loss of self-

9  esteem, and an unwanted change in appearance.

10        30.    Plaintiff DIANA HASROUNI used the Products until approximately

11  February 2020.  She relied on the marketing and advertising of the Products by Defendants

12  in making her decisions to purchase.  She used the Products and as a result thereof

13  experienced hair loss, hair breakage, poor hair condition, hair thinning, bald spots, and

14  change in curl pattern, resulting in loss of self-esteem, and an unwanted change in

15  appearance.

16        31.    Plaintiff NATASHA HOBSON used the Products until approximately May

17  2020.  She relied on the marketing and advertising of the Products by Defendants in

18  making her decisions to purchase.  She used the Products and as a result thereof

19  experienced hair loss, hair breakage, poor hair condition, hair thinning, bald spots, change

20  in curl pattern, and scalp irritation, resulting in emotional distress, embarrassment, loss of

21  self-esteem, and an unwanted change in appearance.

22        32.    Plaintiff DONNA HUGHES used the Products until approximately May

23  2020.  She relied on the marketing and advertising of the Products by Defendants in

24  making her decisions to purchase.  She used the Products and as a result thereof

25  experienced hair loss, hair breakage, poor hair condition, hair thinning, bald spots, change

26  in curl pattern, and scalp irritation, resulting in emotional distress, embarrassment, loss of

27  self-esteem and an unwanted change in appearance.

28        33.    Plaintiff GIANNA IMBRONONE used the Products until approximately

Exhibit A

ESENSTEN LAW

1  January 2020.  She relied on the marketing and advertising of the Products by Defendants
2  in making her decisions to purchase.  She used the Products and as a result thereof
3  experienced hair loss, hair breakage, poor hair condition, hair thinning, change in curl
4  pattern and bald spots, resulting in emotional distress, embarrassment, loss of self-esteem,
5  social and relationship issues, loss of confidence, and an unwanted change in appearance.

6      34.     Plaintiff NATALIE KIKKENBORG used the Products until approximately
7  March 2019.  She relied on the marketing and advertising of the Products by Defendants in
8  making her decisions to purchase.  She used the Products and as a result thereof
9  experienced hair loss, hair breakage, poor hair condition, hair thinning, and change in curl
10 pattern, resulting in emotional distress, embarrassment, loss of self-esteem, and an
11 unwanted change in appearance.

12     35.     Plaintiff RHONDA KOEHLER used the Products until approximately
13 January 2020.  She relied on the marketing and advertising of the Products by Defendants
14 in making her decisions to purchase.  She used the Products and as a result thereof
15 experienced hair loss, hair breakage, poor hair condition, hair thinning, scalp irritation, loss
16 of hair density, and change in curl pattern, resulting in emotional distress, embarrassment,
17 loss of self-esteem, social and relationship issues, self-consciousness, and an unwanted
18 change in appearance.

19     36.     Plaintiff KRISTINA LANE used the Products until approximately May
20 2020.  She relied on the marketing and advertising of the Products by Defendants in
21 making her decisions to purchase.  She used the Products and as a result thereof
22 experienced hair loss, hair breakage, poor hair condition, bald spots, change in curl pattern
23 and scalp irritation, resulting in emotional distress, embarrassment, loss of self-esteem,
24 depression, relationship issues and an unwanted change in appearance.

25     37.     Plaintiff JEANNE LASHMETT used the Products until approximately May
26 2020.  She relied on the marketing and advertising of the Products by Defendants in
27 making her decisions to purchase.  She used the Products and as a result thereof
28 experienced hair loss, thinning, poor hair condition, thinning, hair frizzing, and change in

11
COMPLAINT

Exhibit A

ESENSTEN LAW

1   curl pattern, resulting in emotional distress, embarrassment, feeling distraught, and an

2   unwanted change in appearance.

3       38.     Plaintiff JULIA LEHNEN used the Products until approximately May 2020.

4   She relied on the marketing and advertising of the Products by Defendants in making her

5   decisions to purchase. She used the Products and as a result thereof experienced hair loss,

6   hair breakage, poor hair condition, hair thinning, change in curl pattern, and scalp

7   irritation, resulting in emotional distress, embarrassment, loss of self-esteem, and an

8   unwanted change in appearance.

9       39.     Plaintiff VICKIE LEWIS used the Products until approximately May 2020.

10   She relied on the marketing and advertising of the Products by Defendants in making her

11   decisions to purchase. She used the Products and as a result thereof experienced hair loss,

12   hair thinning, bald spots, frizzing, and scalp irritation, resulting in emotional distress.

13       40.     Plaintiff JENNIFER LONGBINE used the Products until approximately May

14   2020. She relied on the marketing and advertising of the Products by Defendants in

15   making her decisions to purchase. She used the Products and as a result thereof

16   experienced hair loss, hair breakage, hair thinning, poor hair condition, bald spots, change

17   in curl pattern, and scalp irritation, resulting in emotional distress, embarrassment, loss of

18   self-esteem, social and relationship issues, and an unwanted change in appearance.

19       41.     Plaintiff FELICIA MONTANO used the Products until approximately April

20   2020. She relied on the marketing and advertising of the Products by Defendants in

21   making her decisions to purchase. She used the Products and as a result thereof

22   experienced hair loss, hair breakage, hair thinning, bald spots, and scalp irritation, resulting

23   in emotional distress, loss of self-esteem, and an unwanted change in appearance.

24       42.     Plaintiff NARAYANA MONTUFAR used the Products until

25   approximately June 2020. She relied on the marketing and advertising of the Products by

26   Defendants in making her decisions to purchase. She used the Products and as a result

27   thereof experienced hair loss, hair breakage, poor hair condition, hair thinning, bald spots,

28   and change in curl pattern, resulting in emotional distress, embarrassment, loss of self-

ESENSTEN LAW

1   esteem, and an unwanted change in appearance.

2       43.   Plaintiff MARIA GUADALUPE MORA used the Products until

3 approximately January 2020. She relied on the marketing and advertising of the Products

4 by Defendants in making her decisions to purchase. She used the Products and as a result

5 thereof experienced hair loss, hair breakage, poor hair condition, hair thinning, and change

6 in curl pattern, resulting in emotional distress, embarrassment, loss of self-esteem, and an

7 unwanted change in appearance.

8       44.   Plaintiff NICOLE MUSCARELLA used the Products until approximately

9 January 2020. She relied on the marketing and advertising of the Products by Defendants

10 in making her decisions to purchase. She used the Products and as a result thereof

11 experienced hair loss, poor hair condition, hair thinning, change in curl pattern, and scalp

12 irritation, resulting in emotional distress, embarrassment, loss of self-esteem, relationship

13 issues and an unwanted change in appearance.

14       45.   Plaintiff GIGI OLIVER used the Products until approximately May 2020.

15 She relied on the marketing and advertising of the Products by Defendants in making her

16 decisions to purchase. She used the Products and as a result thereof experienced hair

17 breakage, poor hair condition, hair thinning and scalp irritation, resulting in low self-

18 esteem and an unwanted change in appearance.

19       46.   Plaintiff ELIANA PALMA used the Products until approximately February

20 2020. She relied on the marketing and advertising of the Products by Defendants in

21 making her decisions to purchase. She used the Products and as a result thereof

22 experienced hair loss, hair breakage, poor hair condition, hair thinning, bald spots, change

23 in curl pattern, hair dryness and brittleness, and scalp irritation, resulting in emotional

24 distress, embarrassment, loss of self-esteem, relationship issues, and an unwanted change

25 in appearance.

26       47.   Plaintiff KRISTEN PEDLEY used the Products until approximately April,

27 2020. She relied on the marketing and advertising of the Products by Defendants in

28 making her decisions to purchase. She used the Products and as a result thereof

Exhibit A

ESENSTEN LAW

1 experienced hair loss, poor hair condition, change in curl pattern and hair thinning,
2 resulting in embarrassment and an unwanted change in appearance.

3    48.    Plaintiff MICHELLE PHARES used the Products until early 2020.  She
4 relied on the marketing and advertising of the Products by Defendants in making her
5 decisions to purchase.  She used the Products and as a result thereof experienced hair loss,
6 hair breakage, poor hair condition, hair thinning, bald spots, change in curl pattern, and
7 scalp irritation, resulting in emotional distress, embarrassment, loss of self-esteem,
8 relationship issues and an unwanted changes in her appearance.

9    49.    Plaintiff CHRISTINA PIERRE used the Products until approximately May
10 2020.  She relied on the marketing and advertising of the Products by Defendants in
11 making her decisions to purchase.  She used the Products and as a result thereof
12 experienced hair loss, hair breakage, poor hair condition, hair thinning, change in curl
13 pattern, and scalp irritation, resulting in emotional distress, embarrassment, loss of self-
14 esteem, social and relationship issues, and an unwanted change in appearance.

15    50.    Plaintiff LAUREN RACUSIN used the Products until approximately May
16 2020.  She relied on the marketing and advertising of the Products by Defendants in
17 making her decisions to purchase.  She used the Products and as a result thereof
18 experienced hair loss, poor hair condition, hair thinning, change in curl pattern and scalp
19 irritation, resulting in emotional distress, embarrassment, loss of self-esteem, and an
20 unwanted change in appearance.

21    51.    Plaintiff SARAH RASHID used the Products until approximately March
22 2020.  She relied on the marketing and advertising of the Products by Defendants in
23 making her decisions to purchase.  She used the Products and as a result thereof
24 experienced hair loss, hair breakage, poor hair condition, hair thinning, and scalp irritation,
25 resulting in emotional distress, embarrassment, and loss of self-esteem.

26    52.    Plaintiff EMMANUEL REGISTER used the Products until approximately
27 June 2020.  She relied on the marketing and advertising of the Products by Defendants in
28 making her decisions to purchase.  She used the Products and as a result thereof

ESENSTEN LAW

14

Exhibit A

1  experienced hair loss, hair breakage, poor hair condition, hair thinning, bald spots, change

2  in curl pattern, and scalp irritation, resulting in emotional distress, embarrassment, loss of

3  self- esteem, and an unwanted change in appearance.

4      53.    Plaintiff MARITZA RIVERA used the Products until approximately early

5  2020.  She relied on marketing and advertising of the Products by Defendants in making

6  her decisions to purchase.  She used the Products and as a result thereof experienced hair

7  loss, hair breakage, poor hair condition, hair thinning, bald spots, change in curl pattern,

8  and scalp irritation, resulting in emotional distress, embarrassment, loss of self-esteem,

9  relationship issues and an unwanted change in appearance.

10     54.    Plaintiff CARMEN ROSA used the Products until approximately May 2020.

11  She relied on the marketing and advertising of the Products by Defendants in making her

12  decisions to purchase.  She used the Products and as a result thereof experienced hair loss,

13  hair thinning and change in curl pattern, resulting in embarrassment and an unwanted

14  change in appearance.

15     55.    Plaintiff ANNYOCELI SANTIAGO used the Products until approximately

16  May 2020.  She relied on the marketing and advertising of the Products by Defendants in

17  making her decisions to purchase.   She used the Products and as a result thereof

18  experienced hair loss, hair breakage, poor hair condition, hair thinning, bald spots, change

19  in curl pattern, and scalp irritation, resulting in emotional distress, embarrassment, loss of

20  self-esteem, relationship issues and an unwanted change in appearance.

21     56.    Plaintiff KAALAN SCHAEFFER used the Products until approximately

22  February 2020.  She relied on the marketing and advertising of the Products by Defendants

23  in making her decisions to purchase.  She used the Products and as a result thereof

24  experienced hair loss, hair breakage, poor hair condition, hair thinning, and scalp irritation,

25  resulting in emotional distress, embarrassment, and loss of self-esteem.

26     57.    Plaintiff CANDACE STIMSON used the Products until approximately May

27  2020.  She relied on the marketing and advertising of the Products by Defendants in

28  making her decisions to purchase.  She used the Products and as a result thereof

ESENSTEN LAW

1  experienced hair loss, poor hair condition, hair thinning, bald spots, change in curl pattern,

2  and scalp irritation, resulting in emotional distress, embarrassment, loss of self-esteem, and

3  an unwanted change in appearance.

4     58.    Plaintiff MARYAM TEHRANIE used the Products until approximately

5  February 2020.  She relied on the marketing and advertising of the Products by Defendants

6  in making her decisions to purchase.  She used the Products and as a result thereof

7  experienced hair loss, hair breakage, poor hair condition, hair thinning, bald spots, change

8  in curl pattern, and scalp irritation, resulting in emotional distress, embarrassment, loss of

9  self-esteem, social issues and an unwanted change in appearance.

10    59.    Plaintiff SUZANNE TILLOTSON used the Products until approximately

11  May 2020.  She relied on the marketing and advertising of the Products by Defendants in

12  making her decisions to purchase.  She used the Products and as a result thereof

13  experienced hair loss, hair breakage, poor hair condition, hair thinning, change in curl

14  pattern, and bald spots, resulting in emotional distress, embarrassment, loss of self-esteem,

15  and an unwanted change in appearance.

16    60.    Plaintiff MEGAN TRAMA used the Products until approximately March

17  2020.  She relied on the marketing and advertising of the Products by Defendants in

18  making her decisions to purchase.  She used the Products and as a result thereof

19  experienced hair loss, hair breakage, change in curl pattern, and scalp irritation, resulting

20  in embarrassment, loss of self-esteem, and an unwanted change in appearance.

21    61.    Plaintiff JEANETTE TRAVIS used the Products until approximately May

22  2020.  She relied on the marketing and advertising of the Products by Defendants in

23  making her decisions to purchase.  She used the Products and as a result thereof

24  experienced hair loss, hair breakage, poor hair condition, hair thinning, bald spots, change

25  in curl pattern, and scalp irritation, resulting in emotional distress, embarrassment, loss of

26  self-esteem, relationship issues and an unwanted change in appearance.

27    62.    Plaintiff STELLA WARDA used the Products until approximately May

28  2020.  She relied on the marketing and advertising of the Products by Defendants in

Exhibit A

1  making her decisions to purchase. She used the Products and as a result thereof

2  experienced hair loss, hair breakage, poor hair condition, hair thinning, bald spots, change

3  in curl pattern, and scalp irritation, resulting in emotional distress, embarrassment, loss of

4  self-esteem, social and relationship issues, and an unwanted change in appearance.

5          63.    Plaintiff SHIRLEY WEISS used the Products until approximately March

6  2020. She relied on the marketing and advertising of the Products by Defendants in

7  making her decisions to purchase. She used the Products and as a result thereof

8  experienced hair loss, hair breakage, poor hair condition, hair thinning, change in curl

9  pattern, and scalp irritation, resulting in emotional distress.

10         64.    Plaintiff JENNIFER WHITCOMB used the Products until approximately

11 May 2020. She relied on the marketing and advertising of the Products by Defendants in

12 making her decisions to purchase. She used the Products and as a result thereof

13 experienced hair loss, hair breakage, poor hair condition, hair thinning, and change in curl

14 pattern, resulting in emotional distress, embarrassment, loss of self-esteem, and an

15 unwanted change in her appearance.

16         65.    Plaintiff JILLIE WILLIAMS used the Products until approximately October

17 2019. She relied on the marketing and advertising of the Products by Defendants in

18 making her decisions to purchase. She used the Products and as a result thereof

19 experienced hair loss, hair breakage, poor hair condition, hair thinning, bald spots, change

20 in curl pattern, and scalp irritation, resulting in emotional distress, embarrassment, loss of

21 self-esteem, social and relationship issues, and an unwanted change in appearance.

22         66.    Plaintiff AMANDA WILSON used the Products until approximately May

23 2020. She relied on the marketing and advertising of the Products by Defendants in

24 making her decisions to purchase. She used the Products and as a result thereof

25 experienced hair loss, hair breakage, poor hair condition, hair thinning, and bald spots,

26 resulting in emotional distress, embarrassment, loss of self-esteem, relationship issues and

27 an unwanted change in appearance.

28         67.    As alleged herein, Defendants, and each of them, failed to disclose to

ESENSTEN LAW

17
COMPLAINT

Exhibit A

1  Plaintiffs and other consumers that the Products contain ingredient(s) that cause hair loss,

2  breakage, thinning, balding, change in curl pattern, rashes and other injuries, damages and

3  unexpected results when used by the consumer.  Defendants, and each of them, failed to

4  properly warn Plaintiffs and other consumers of the risks and dangers involved with their

5  use of the Products, even after Defendants became aware that the Products had caused, and

6  were continuing to cause, consumers to suffer the severe injuries and damages as alleged

7  herein. .  Further, Defendants, and each of them, failed to recall the Products from the

8  market even after becoming aware that the Products had caused, and were continuing to

9  cause, consumers to suffer the severe injuries and damages as alleged herein.

10  68.  Defendants' advertising and marketing of the Products is intended to and

11  does represent to consumers, including but not limited to Plaintiffs, that the Products are

12  safe, different from, and superior to, other curly hair products available on the market.

13  69.  Plaintiffs were led to believe that the Products were gentle, healthy,

14  effective, safe (meaning, *inter alia,* free of dangerous chemicals or ingredients and not

15  damaging to hair), and fit for use as a hair product by consumers at home, even with daily

16  usage.  Plaintiffs and other consumers reasonably expected that the Products would not

17  cause hair breakage, balding, thinning, change in curl pattern, scalp rashes or other painful,

18  unsightly or dangerous conditions.  Plaintiffs and other consumers further reasonably

19  expected that Defendants would disclose the risks of the Products and previous injuries

20  caused by the Products known to Defendants, or that could have been known to

21  Defendants in the exercise of reasonable diligence, rather than continuing to market, sell

22  and distribute the Products to customers.  Plaintiffs and other consumers further reasonably

23  expected that Defendants had tested the Products to determine if any particular

24  susceptibility to injuries from the Products existed, and that Defendants would warn of any

25  results related to the particular susceptibility of certain consumers or types of consumers to

26  injury from usage of the Products.

27  70.  The representations and warranties by Defendants were in fact false.  Despite

28  the representations and warranties by Defendants, Plaintiffs are informed and believe and

ESENSTEN LAW

18
COMPLAINT

Exhibit A

1   based thereon allege that the Products do, in fact, contain dangerous or damaging

2   ingredients which cause hair breakage, balding, thinning, curl damage, scalp rashes and

3   other painful, unsightly and dangerous conditions.

4          71.    Through various forms of warranties, advertising, marketing, package

5   labeling,  and information on Defendants' websites, which information was placed into the

6   public by Defendants for viewing and use by consumers such as Plaintiffs, Plaintiffs were

7   informed and reasonably believed that the Products would perform as advertised and as

8   reasonably expected, and were safe for use on their hair and free of harsh or dangerous

9   chemicals that could cause the severe injuries and damages as alleged herein. .

10         72.    Plaintiffs are informed and believe and based thereon allege that contrary to

11  the claims, representations, warranties and promises made by Defendants, the Products

12  contain and expose consumers to inappropriate, dangerous or otherwise unsafe chemicals,

13  ingredients or combinations of ingredients known to be unsafe and which could and do

14  cause severe hair damage, balding, thinning, breakage, change in curl pattern and scalp

15  irritation, amongst other dangers.

16         73.    By advertising, marketing, selling and distributing the Products, Defendants

17  made actionable statements upon which Defendants intended Plaintiffs to rely upon  that

18  the Products were fit for their intended use and free of defects, and that the use would not

19  lead to undisclosed safety risks and damages.

20         74.    The Products did not perform as labeled, marketed, warranted, advertised or

21  represented when used in a reasonably foreseeable manner.

22         75.    Defendants had an obligation to adequately warn consumers, including

23  Plaintiffs, about the inherent and unreasonable risks and dangers associated with use of the

24  Products, including, but not limited to, severe hair damage, balding, thinning, hair

25  breakage, damage to curl pattern, hair loss, skin irritation, and other damage.

26         76.    Defendants knew or should have known that the Products posed material

27  risks including, but not limited to, severe hair damage, balding, thinning, hair breakage,

28  damage to curl pattern, hair loss, skin irritation, and other damages.

Exhibit A

77.     Despite the foregoing, Defendants never disclosed such material risks, even after obtaining actual and/or constructive knowledge thereof, and in fact attempted to dismiss or discount such adverse consequences on the DevaCurl website.

78.     Defendants did not provide any warning language in the instructions, packaging and advertising of the Products, either on the Products themselves, in the television, print and internet advertising, or on their websites.  The inherent danger in the lack of warnings include, but are not limited to, the following:

a.     No warnings were given as to the negative results that could occur with usage of the Products even when the consumer followed the instructions regarding usage of the Products.

b.     No warnings were given regarding prior damaging results of usage of the Products by consumers, despite such results being within the actual knowledge or constructive knowledge of Defendants.

79.     Plaintiffs are further informed and believe, and based thereon allege, that Defendants, and each of them, failed to perform adequate, appropriate and thorough consumer testing of the Products prior to marketing and distributing the Product, and/or Defendants failed to heed the results of any such pre-market consumer testing that was performed.

80.     Plaintiffs,  as consumers of the Products, reasonably believed that the Products were safe for usage, and further that Defendants so warranted by the instructions, packaging and advertisement of the Products.

81.     The instructions and labeling on and included with the Products and in Defendants' advertising did not indicate or suggest that the Products were not safe if used in the manner instructed, and Plaintiffs had no reason to believe that the Products were not safe when used.   As the Products are beauty products and not expected by the average consumer, including Plaintiffs, to be inherently dangerous, Plaintiffs were entitled to and did believe that the Products were safe and would not cause damage to hair, scalp or other injuries.  The information provided in the written and published advertising and

ESENSTEN LAW

20
COMPLAINT

Exhibit A

1  instructions is a representation to consumers, including Plaintiffs that the Products would

2  perform as expressly warranted and would do so safely.

3      82.    The representations and warranties made by Defendants create and

4  perpetuate a false perception that there was no risk to the consumer in using the Products.

5      83.    Plaintiffs are informed and believe and based thereon allege that prior to

6  their sustaining their severe injuries and damages caused by their usage of the Products,

7  Defendants received reports from consumers who used the Products according to

8  directions and had experienced disastrous results.  Despite such actual knowledge of the

9  danger of the Products and the damaging results, Defendants did not issue a recall of the

10  Products, nor did Defendants provide any warning on their websites, on the Products, or

11  anywhere else, as to the dangers associated with usage of the Products.  In fact, the

12  DevaCurl website specifically and falsely disclaimed and discounted any negative effects.

13  As such, the Products remained available for usage by consumers even after Defendants

14  had actual knowledge and/or constructive knowledge of the disastrous results associated

15  with the usage thereof.  Such disastrous results were unbeknownst to Plaintiffs at the time

16  of their purchase and use of the Products.

17      84.    After using the Products according to instructions, Plaintiffs experienced

18  results which generally include, but are not limited to severe hair damage, balding,

19  thinning, hair breakage, damage to curl pattern, hair loss, skin irritation, emotional distress

20  and other damages.

21      85.    The Products caused drastic alteration of Plaintiffs' personal appearances,

22  lowering their self-esteem and destroying their willingness to be seen by friends,

23  neighbors, or people in their workplaces, and sometimes impacting their personal and

24  physical relationships with spouses and significant others.

25      86.    Such harm to their appearances and their sense of self and well-being has led

26  Plaintiffs to take drastic and expensive measures in attempts to recover their former

27  appearance (including cutting off of all or most of the hair, salon treatments, medical

28  treatments, home remedies and wigs) only to find that the Products have irrevocably

ESENSTEN LAW

Exhibit A

1  damaged both hair and scalp.

2      87.  Plaintiffs, and each of them, were not aware at the time of injury that the

3  actions of Defendants had caused the injuries and damages as herein alleged.  Plaintiffs, as

4  lay consumers, did not know, and in the exercise of reasonable diligence could not have

5  known, that the products and the actions of Defendants in developing, manufacturing,

6  advertising, marketing, selling and distributing the products were the cause of any damages

7  sustained by them.

8

9  **FIRST CAUSE OF ACTION**

10  **(Negligence, against all Defendants)**

11      88.  Plaintiffs incorporate by reference each and every allegation of the preceding

12  paragraphs of this Complaint as if set forth in full hereat.

13      89.  At all times herein relevant, Defendants owed a duty to Plaintiffs to warn

14  them that usage of the Products posed an unreasonable risk and danger of injury and hair

15  damage.  Defendants further owed a duty to Plaintiffs not to expose them to a product

16  known to cause bodily harm.  Defendants further owed a duty to Plaintiffs to provide

17  complete and accurate labeling, warnings in marketing, advertising and packaging the

18  Products.

19      90.  Defendants negligently and carelessly manufactured, designed, researched,

20  marketed and distributed the Products, and failed to adequately test and warn Plaintiffs of

21  the inherent and unreasonable risks and dangers of the Products.

22      91.  Defendants knew, or in the exercise of reasonable diligence should have

23  known, that the Products were dangerous or were likely to be dangerous when used as

24  directed or misused in a reasonably foreseeable manner.

25      92.  Defendants knew, or in the exercise of reasonable diligence should have

26  known, that Plaintiffs and other consumers would not recognize the dangers inherent in the

27  Products and would rely on the representations and warranties of Defendants as to the

28  safety and functionality of the Products.

ESENSTEN LAW

Exhibit A

93.    Based herein Defendants breached each and every duty owed to the
Plaintiffs.

94.    A reasonable manufacturer, distributor or seller of a product under the same
or similar circumstances would have warned of the danger inherent in the Products.

95.    As a direct and proximate result of the aforesaid negligence of Defendants,
Plaintiffs have suffered actual, general, consequential, and special damages, including, but
not limited to, severe injuries and damages y and severe emotional distress in an amount to
be proven at trial.

## SECOND CAUSE OF ACTION

**(Strict Product Liability: Design Defect, against all Defendants)**

96.    Plaintiffs incorporate by reference each and every allegation of the preceding
paragraphs of this Complaint as if set forth in full hereat.

97.    The Products are defectively manufactured, formulated and/or designed, and
are inherently and unreasonably dangerous, because they fail to perform as safely as an
ordinary consumer would expect, and because the unreasonable risk of injury inherent in
the Products and the ingredients thereof outweighs any benefits conferred by the Products.
The unreasonably dangerous and defective condition of the Products renders them not
reasonably fit, suitable or safe for their intended purpose.

98.    Defendants introduced the Products into the stream of commerce in the
United States, despite the fact that Defendants knew or should have known that the
Products were in an unreasonably dangerous and defective condition as described above.
This conduct evinces a callous and conscious disregard for public safety by Defendants.

99.    The risks associated with the Products far outweigh any potential benefit to
be obtained from the usage of the Products.  The substantial gravity of the harm
experienced by Plaintiffs is not outweighed by any possible utility of these beauty
products.

100.    As a direct and proximate result of the unreasonably dangerous and defective
condition of the Products, Plaintiffs have suffered actual, general, consequential, and

ESENSTEN LAW

1   special damages, including, but not limited to, severe injuries and damages  and severe

2   emotional distress in an amount to be proven at trial.

3       101.   The failure of the Products to perform safely was a substantial factor in

4   causing the injuries and damages to Plaintiffs.

5       102.   Defendants are strictly liable to Plaintiffs for said damages as well as

6   exemplary damages for Defendants' malicious conduct in knowingly placing the

7   dangerous Products into the stream of commerce.

8                        **THIRD CAUSE OF ACTION**

9          **(Strict Product Liability: Failure to Warn, against all Defendants)**

10      103.   Plaintiffs incorporate by reference each and every allegation of the preceding

11  paragraphs of this Complaint as if set forth in full hereat.

12      104.   The Products had potential risks and side effects that were known or should

13  have been known to Defendants in light of the general knowledge in the scientific

14  community at the time of design, formulation, manufacture, distribution and sale of the

15  Products.

16      105.   The potential risks and side effects presented a substantial danger when the

17  Products are used  in a reasonably foreseeable manner.

18      106.   Plaintiffs, as ordinary consumers, would not have and did not recognize the

19  potential risks and side effects of the Products.

20      107.   Defendants owed a duty to Plaintiffs to warn that the Products presented

21  substantial risks and side effects.

22      108.   Defendants failed to adequately warn Plaintiffs of the unreasonable risks and

23  dangers associated with using the Products.

24      109.   The lack of sufficient instructions and warnings was a substantial factor in

25  causing the injuries and damages to Plaintiffs.

26      110.   Defendants breached each and every one of the duties owed to Plaintiffs.

27      111.   As a direct and proximate result of Defendants' failure to warn, Plaintiffs

28  have suffered actual, general, consequential, and special damages, including, but not

ESENSTEN LAW

Exhibit A

1  limited to, serious personal injury and severe emotional distress in an amount to be proven
2  at trial.

3    112.   Defendants are strictly liable to Plaintiffs for the injuries and damages
4  alleged herein

5  **FOURTH CAUSE OF ACTION**

6  **(Negligent Product Liability, against all Defendants)**

7    113.   Plaintiffs incorporate by reference each and every allegation of the preceding
8  paragraphs of this Complaint as if set forth in full hereat.

9    114.   Defendants owed a duty to Plaintiffs to properly formulate, manufacture,
10  design, research, inspect and distribute the Products, and adequately warn consumers of
11  the inherent and unreasonable risks and dangers of the Products.

12    115.   Defendants also owed a duty to Plaintiffs to exercise ordinary care in the
13  formulation, marketing, design, selling, distributing, testing, packaging, and labeling of the
14  Products.

15    116.   Defendants were aware, or should have been aware, that the Products were
16  not safe for use by consumers (including Plaintiffs).

17    117.   Defendants knew, or in the exercise of ordinary and reasonable care should
18  have known, that if the Products were not properly formulated, manufactured, designed,
19  assembled, compounded, tested, inspected, packaged, labeled, fabricated, constructed,
20  analyzed, distributed, serviced, merchandised, advertised, promoted, marketed and sold for
21  the use and purpose for which they were intended, they were likely to injure the person or
22  persons by whom they were used.

23    118.   Defendants formulated, manufactured, sold, designed, assembled,
24  compounded, developed, maintained, tested or failed to test, inspected or failed to inspect,
25  packaged, labeled, fabricated, constructed, analyzed, distributed, serviced, merchandised,
26  advertised, promoted, marketed, instructed or failed to instruct regarding, warned or failed
27  to warn consumers (including Plaintiffs) of the foregoing risks and dangers of using the
28  Products as directed, which Products were intended by Defendant to be used by the general

ESENSTEN LAW

1  public for the purpose of cleansing, conditioning, protecting and otherwise treating curly

2  hair.

3      119.    Defendants knew or should have known by the use of scientific knowledge

4  available at the time of manufacture, sale and/or distribution of the Product, and further by

5  the negative results that had been reported to Defendants by consumers following use of

6  the Products, that the Products were unsafe for the intended and foreseeable use because of

7  the aforementioned defects in its design, manufacture, testing, installation, components and

8  constituents, so that it could not safely serve its purpose.

9      120.    Defendants exposed the users of the Products, including but not limited to

10  Plaintiffs, to the risk of serious injury, despite the foregoing.

11      121.    Defendants knew or reasonably should have known that the ordinary and

12  foreseeable users of the Products, including but not limited to Plaintiffs, would not

13  recognize all of the potential risks and dangers of the Product, including, but not limited to,

14  the risk inherent in being exposed to formaldehyde and other harsh and dangerous

15  chemicals contained within the Product, and the risks that the Products would damage or

16  destroy their hair and scalps.

17      122.    Plaintiffs used the aforementioned Products for the purpose for which they

18  were intended, and in a manner that was reasonably foreseeable by Defendants.

19      123.    Upon information and belief, at the time Plaintiffs used the Products, they

20  were substantially the same as when they left Defendants' possession for distribution.

21      124.    Defendants breached each and every one of the duties owed to Plaintiffs.

22      125.    As a result of the defective and dangerous conditions of the Products, and a

23  result of Defendants' failure to adequately warn Plaintiffs regarding the dangers and use,

24  the Products caused serious and severe injuries and damages to Plaintiffs.

25      126.    As a result of the above-described defective conditions, and as a result of the

26  failure to adequately warn, train and/or instruct by Defendants, Plaintiffs were hurt and

27  injured in their health, strength, and activity, all of which injuries have caused and will

28  continue to cause them great mental, physical, and nervous pain and suffering. As a result

Exhibit A

1  of such injuries, Plaintiffs have suffered general damages in an amount to be proven at the

2  time of the trial of this action.

3      127.   As a further result of the above-described defective conditions, and as a

4  result of the failure of Defendants to adequately warn, train and/or instruct Plaintiffs have

5  suffered actual, general, consequential, and special damages, including, but not limited to,

6  serious personal injury and severe emotional distress in an amount to be proven at trial.

7  **FIFTH CAUSE OF ACTION**

8  **(Breach of Implied Warranty of Merchantability, against all Defendants)**

9      128.  Plaintiffs incorporate by reference each and every allegation of the preceding

10 paragraphs of this complaint as if set forth in full hereat.

11     129.   The Products were sold by Defendants with the implied warranty of

12 merchantability because Defendants are merchants under the meaning employed by statute

13 and the common law.

14     130.   Defendants represented and warranted that the Products were of

15 merchantable quality.

16     131.   Defendants sold the Products to Plaintiffs with the implied warranties that

17 the Products would pass without objection in the trade, were fit for the ordinary purpose

18 for which they were sold and used, were adequately contained, packaged, and labeled, and

19 conformed to the promises or affirmations of fact made on the packaging, labeling and

20 marketing of the Products.

21     132.   The Products did not meet the foregoing criteria, as they were not fit for the

22 ordinary purposes for which this type of beauty products are used, and was not of the same

23 quality as those generally accepted in the trade.  The defects in the Product existed prior to

24 the delivery of the Products to Plaintiffs.

25     133.   Plaintiffs have incurred damages as described herein as a direct and

26 proximate result of their use of the defective Product and Defendants' breach of the above-

27 referenced warranties.  Specifically, Plaintiffs have suffered actual, general, consequential,

28 and special damages, including, but not limited to, serious injuries and damages and severe

ESENSTEN LAW

Exhibit A

1 | emotional distress in an amount to be proven at trial.

2 | ### SIXTH CAUSE OF ACTION

3 | ### (Breach of Express Warranty, against all Defendants)

4 | 134.   Plaintiffs incorporate by reference each and every allegation of the preceding

5 | paragraphs of this complaint as if set forth in full hereat.

6 | 135.   The Products were sold by Defendants an express warranty which included

7 | the representations and promises made in Defendants' marketing, advertising,

8 | infomercials, websites, and internet advertising as well as the Product packaging, as set

9 | forth hereinabove.

10 | 136.   Defendants breached the express warranties made by them concerning the

11 | Products, as the warranties, statements and representations made were false. Had Plaintiffs

12 | known the true nature of the Products, or had Plaintiffs been aware of the falsity of the

13 | statements, representations and express warranties made by Defendants concerning the

14 | Products, they would not have purchased or used the Products.

15 | 137.   Plaintiffs have incurred damages as described herein as a direct and

16 | proximate result of their use of the defective Product and Defendants' breach of the above-

17 | referenced warranties. Specifically, Plaintiffs have suffered actual, general, consequential,

18 | and special damages, including, but not limited to, serious injuries and damages   and

19 | severe emotional distress in an amount to be proven at trial.

20 | ### SEVENTH CAUSE OF ACTION

21 | ### (Violation of California False Advertising Law, *Business & Prof. Code* Sec. 17500, *et*

22 | *seq.*, against all Defendants)

23 | 138.   Plaintiffs incorporate by reference each and every allegation of the preceding

24 | paragraphs of this Complaint as if set forth in full hereat.

25 | 139.   As purchasers of the Products, Plaintiffs are consumers as defined by the

26 | California False Advertising Law, *Business & Prof. Code* Sec. 17500, *et seq.* Defendants'

27 | business activities as alleged herein involve trade or commerce, are addressed to the

28 | market generally, and implicate consumer protection concerns.

ESENSTEN LAW

Exhibit A

140.    Through advertising and packaging, Defendants used deception, fraud, false promise and misrepresentations in connection with their marketing, sale, advertisement and distribution of the Products, as alleged hereinabove.

141.    Defendants knew, or should have known, and intended, that Plaintiffs and other consumers would rely on their labeling, marketing, advertisement and promotion of the Products, yet nonetheless Defendants concealed, suppressed and omitted material facts to Plaintiffs and other consumers.

142.    Defendants' conduct as alleged herein is a violation of California False Advertising Law.

143.    Plaintiffs have incurred damages as described herein as a direct and proximate result of their use of the defective Product and Defendants' violation of the California False Advertising Law.  Specifically, Plaintiffs have suffered actual, general, consequential, and special damages, including, but not limited to, serious injuries and damages and severe emotional distress in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief and judgment against Defendants, and each of them, as follows:

**ON THE FIRST CAUSE OF ACTION:**

1.    General damages in an amount according to proof;

2.    Special damages in an amount according to proof;

**ON THE SECOND CAUSE OF ACTION:**

3.    General damages in an amount according to proof;

4.    Special damages in an amount according to proof;

5.    Exemplary and punitive damages in an amount according to proof;

**ON THE THIRD CAUSE OF ACTION:**

6.    General damages in an amount according to proof;

7.    Special damages in an amount according to proof;

**ON THE FOURTH CAUSE OF ACTION:**

    8.    General damages in an amount according to proof;

    9.    Special damages in an amount according to proof;

**ON THE FIFTH CAUSE OF ACTION:**

    10.    General damages in an amount according to proof;

    11.    Special damages in an amount according to proof;

**ON THE SIXTH CAUSE OF ACTION:**

    12.    General damages in an amount according to proof;

    13.    Special damages in an amount according to proof;

**ON THE SEVENTH CAUSE OF ACTION:**

    14.    General damages in an amount according to proof;

    15.    Special damages in an amount according to proof;

    16.    Exemplary and punitive damages in an amount according to proof;

**ON ALL CAUSES OF ACTION**

    17.    Prejudgment interest as allowed by law;

    18.    Attorneys' fees and costs as allowed by law; and

    19.    For such other and further relief as this Court finds just, equitable and
proper.

DATED:   July 2, 2020            **ESENSTEN LAW**
                                  ROBERT L. ESENSTEN
                                  RANDI R. GEFFNER

                            By:  /s/Randi R. Geffner
                                    RANDI R. GEFFNER
                            Attorneys For Plaintiffs

Exhibit A

ESENSTEN LAW

Electronically FILED by Superior Court of California, County of Los Angeles on 07/06/2020 02:53:28 PM Sherri R. Carter, Executive Officer/Clerk of Court, by H. Flores-Hernandez,Deputy Clerk

20STCV25262

/s/ Randi R. Geffner

Exhibit A

| SHORT TITLE: Alexa Bates, et al. v. Deva Concepts, LLC, et al. | CASE NUMBER 20STCV25262 |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

> **This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

> **Applicable Reasons for Choosing Court Filing Location (Column C)**

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| Other Personal Injury/ Property Damage/ Wrongful Death Tort | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 1, 11 |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11 |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1, 4, 11 |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1, 4, 11 |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1, 4, 11 |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1, 4, 11 |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 1 of 4

Exhibit A

| SHORT TITLE: Alexa Bates, et al. v. Deva Concepts, LLC, et al. | CASE NUMBER |
|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109  Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012  Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031  Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation       Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032  Quiet Title | 2, 6 |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

Exhibit A

| SHORT TITLE: Alexa Bates, et al. v. Deva Concepts, LLC, et al. | CASE NUMBER |
|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus<br>☐ A6152  Writ - Mandamus on Limited Court Case Matter<br>☐ A6153  Writ - Other Limited Court Case Review | 2, 8<br>2<br>2 |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☑ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment<br>☐ A6160  Abstract of Judgment<br>☐ A6107  Confession of Judgment (non-domestic relations)<br>☐ A6140  Administrative Agency Award (not unpaid taxes)<br>☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112  Other Enforcement of Judgment Case | 2, 5, 11<br>2, 6<br>2, 9<br>2, 8<br>2, 8<br>2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only<br>☐ A6040  Injunctive Relief Only (not domestic/harassment)<br>☐ A6011  Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8<br>2, 8<br>1, 2, 8<br>1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment<br>☐ A6123  Workplace Harassment<br>☐ A6124  Elder/Dependent Adult Abuse Case<br>☐ A6190  Election Contest<br>☐ A6110  Petition for Change of Name/Change of Gender<br>☐ A6170  Petition for Relief from Late Claim Law<br>☐ A6100  Other Civil Petition | 2, 3, 9<br>2, 3, 9<br>2, 3, 9<br>2<br>2, 7<br>2, 3, 8<br>2, 9 |

**CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION**

Exhibit A

| SHORT TITLE: Alexa Bates, et al. v. Deva Concepts, LLC, et al. | CASE NUMBER |
| --- | --- |

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the
type of action that you have selected.  Enter the address which is the basis for the filing location, including zip code.
(No address required for class action cases).

| REASON:  ☐ 1. ☑ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11. | ADDRESS: 1633 South Victoria Ave. |
| --- | --- |
| CITY: Los Angeles | STATE: CA | ZIP CODE: 90019 | |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the Central _____ District of
the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: July 2, 2020 _____

/s/ Randi R. Geffner _____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY
COMMENCE YOUR NEW COURT CASE:**

1.  Original Complaint or Petition.

2.  If filing a Complaint, a completed Summons form for issuance by the Clerk.

3.  Civil Case Cover Sheet, Judicial Council form CM-010.

4.  Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev.
02/16).

5.  Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6.  A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a
minor under 18 years of age will be required by Court in order to issue a summons.

7.  Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum
must be served along with the summons and complaint, or other initiating pleading in the case.

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 4 of 4

Exhibit A

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>**07/06/2020**<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _H. Flores-Hernandez_ Deputy |
| NOTICE OF CASE ASSIGNMENT<br><br>UNLIMITED CIVIL CASE | |
| **Your case is assigned for all purposes to the judicial officer indicated below.** | CASE NUMBER:<br>20STCV25262 |

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✓ | Laura A. Seigle | 48 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on _07/07/2020_
   (Date)

Sherri R. Carter, Executive Officer / Clerk of Court

By _H. Flores-Hernandez_ , Deputy Clerk

LACIV 190 (Rev 6/18)
LASC Approved 05/06

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

Exhibit A

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION

The Division 7 Rules were effective January 1, 2007. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES

The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE

A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS

Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS

All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS

Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE

A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE

The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date. All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference. These matters may be heard and resolved at this conference. At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS

The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions

Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases

Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status. If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

Exhibit A

2019-GEN-014-00

**FILED**
Superior Court of California
County of Los Angeles

MAY 03 2019

Sherri R. Carter, Executive Officer/Clerk

By _____, Deputy
Rizalinda Mina

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

IN RE LOS ANGELES SUPERIOR COURT )        FIRST AMENDED GENERAL ORDER
— MANDATORY ELECTRONIC FILING   )
FOR CIVIL                        )
                                 )
                                 )
                                 )
_____)

On December 3, 2018, the Los Angeles County Superior Court mandated electronic filing of all documents in Limited Civil cases by litigants represented by attorneys. On January 2, 2019, the Los Angeles County Superior Court mandated electronic filing of all documents filed in Non-Complex Unlimited Civil cases by litigants represented by attorneys. (California Rules of Court, rule 2.253(b).) All electronically filed documents in Limited and Non-Complex Unlimited cases are subject to the following:

1) DEFINITIONS

   a) **"Bookmark"**  A bookmark is a PDF document navigational tool that allows the reader to quickly locate and navigate to a designated point of interest within a document.

   b) **"Efiling Portal"**  The official court website includes a webpage, referred to as the efiling portal, that gives litigants access to the approved Electronic Filing Service Providers.

   c) **"Electronic Envelope"**  A transaction through the electronic service provider for submission of documents to the Court for processing which may contain one or more PDF documents attached.

   d) **"Electronic Filing"**  Electronic Filing (eFiling) is the electronic transmission to a Court of a document in electronic form. (California Rules of Court, rule 2.250(b)(7).)

1

FIRST AMENDED GENERAL ORDER RE MANDATORY ELECTRONIC FILING FOR CIVIL

Exhibit A

2019-GEN-014-00

e) **"Electronic Filing Service Provider"**   An Electronic Filing Service Provider (EFSP) is a person or entity that receives an electronic filing from a party for retransmission to the Court. In the submission of filings, the EFSP does so on behalf of the electronic filer and not as an agent of the Court.  (California Rules of Court, rule 2.250(b)(8).)

f) **"Electronic Signature"**   For purposes of these local rules and in conformity with Code of Civil Procedure section 17, subdivision (b)(3), section 34, and section 1010.6, subdivision (b)(2), Government Code section 68150, subdivision (g), and California Rules of Court, rule 2.257, the term "Electronic Signature" is generally defined as an electronic sound, symbol, or process attached to or logically associated with an electronic record and executed or adopted by a person with the intent to sign the electronic record.

g) **"Hyperlink"**   An electronic link providing direct access from one distinctively marked place in a hypertext or hypermedia document to another in the same or different document.

h) **"Portable Document Format"**   A digital document format that preserves all fonts, formatting, colors and graphics of the original source document, regardless of the application platform used.

2) MANDATORY ELECTRONIC FILING

a) Trial Court Records

Pursuant to Government Code section 68150, trial court records may be created, maintained, and preserved in electronic format.  Any document that the Court receives electronically must be clerically processed and must satisfy all legal filing requirements in order to be filed as an official court record (California Rules of Court, rules 2.100, et seq. and 2.253(b)(6)).

b) Represented Litigants

Pursuant to California Rules of Court, rule 2.253(b), represented litigants are required to electronically file documents with the Court through an approved EFSP.

c) Public Notice

The Court has issued a Public Notice with effective dates the Court required parties to electronically file documents through one or more approved EFSPs.  Public Notices containing effective dates and the list of EFSPs are available on the Court's website, at www.lacourt.org.

2

Exhibit A

2019-GEN-014-00

d) Documents in Related Cases

Documents in related cases must be electronically filed in the eFiling portal for that case type if electronic filing has been implemented in that case type, regardless of whether the case has been related to a Civil case.

3) EXEMPT LITIGANTS

a) Pursuant to California Rules of Court, rule 2.253(b)(2), self-represented litigants are exempt from mandatory electronic filing requirements.

b) Pursuant to Code of Civil Procedure section 1010.6, subdivision (d)(3) and California Rules of Court, rule 2.253(b)(4), any party may make application to the Court requesting to be excused from filing documents electronically and be permitted to file documents by conventional means if the party shows undue hardship or significant prejudice.

4) EXEMPT FILINGS

a) The following documents shall not be filed electronically:

    i) Peremptory Challenges or Challenges for Cause of a Judicial Officer pursuant to Code of Civil Procedure sections 170.6 or 170.3;

    ii) Bonds/Undertaking documents;

    iii) Trial and Evidentiary Hearing Exhibits

    iv) Any ex parte application that is filed concurrently with a new complaint including those that will be handled by a Writs and Receivers department in the Mosk courthouse; and

    v) Documents submitted conditionally under seal. The actual motion or application shall be electronically filed. A courtesy copy of the electronically filed motion or application to submit documents conditionally under seal must be provided with the documents submitted conditionally under seal.

b) Lodgments

Documents attached to a Notice of Lodgment shall be lodged and/or served conventionally in paper form. The actual document entitled, "Notice of Lodgment," shall be filed electronically.

//

//

3

Exhibit A

2019-GEN-014-00

5) ELECTRONIC FILING SYSTEM WORKING PROCEDURES

Electronic filing service providers must obtain and manage registration information for persons
and entities electronically filing with the court.

6) TECHNICAL REQUIREMENTS

   a) Electronic documents must be electronically filed in PDF, text searchable format when
      technologically feasible without impairment of the document's image.

   b) The table of contents for any filing must be bookmarked.

   c) Electronic documents, including but not limited to, declarations, proofs of service, and
      exhibits, must be bookmarked within the document pursuant to California Rules of Court, rule
      3.1110(f)(4). Electronic bookmarks must include links to the first page of each bookmarked
      item (e.g. exhibits, declarations, deposition excerpts) and with bookmark titles that identify the
      bookedmarked item and briefly describe the item.

   d) Attachments to primary documents must be bookmarked. Examples include, but are not
      limited to, the following:

      i)    Depositions;

      ii)   Declarations;

      iii)  Exhibits (including exhibits to declarations);

      iv)   Transcripts (including excerpts within transcripts);

      v)    Points and Authorities;

      vi)   Citations; and

      vii)  Supporting Briefs.

   e) Use of hyperlinks within documents (including attachments and exhibits) is strongly
      encouraged.

   f) Accompanying Documents

      Each document acompanying a single pleading must be electronically filed as a separate
      digital PDF document.

   g) Multiple Documents

      Multiple documents relating to one case can be uploaded in one envelope transaction.

4

Exhibit A

2019-GEN-014-00

h) Writs and Abstracts

Writs and Abstracts must be submitted as a separate electronic envelope.

i) Sealed Documents

If and when a judicial officer orders documents to be filed under seal, those documents must be filed electronically (unless exempted under paragraph 4); the burden of accurately designating the documents as sealed at the time of electronic submission is the submitting party's responsibility.

j) Redaction

Pursuant to California Rules of Court, rule 1.201, it is the submitting party's responsibility to redact confidential information (such as using initials for names of minors, using the last four digits of a social security number, and using the year for date of birth) so that the information shall not be publicly displayed.

7) ELECTRONIC FILING SCHEDULE

a) Filed Date

i) Any document received electronically by the court between 12:00 am and 11:59:59 pm shall be deemed to have been effectively filed on that court day if accepted for filing. Any document received electronically on a non-court day, is deemed to have been effectively filed on the next court day if accepted. (California Rules of Court, rule 2.253(b)(6); Code Civ. Proc. § 1010.6(b)(3).)

ii) Notwithstanding any other provision of this order, if a digital document is not filed in due course because of: (1) an interruption in service; (2) a transmission error that is not the fault of the transmitter; or (3) a processing failure that occurs after receipt, the Court may order, either on its own motion or by noticed motion submitted with a declaration for Court consideration, that the document be deemed filed and/or that the document's filing date conform to the attempted transmission date.

8) EX PARTE APPLICATIONS

a) Ex parte applications and all documents in support thereof must be electronically filed no later than 10:00 a.m. the court day before the ex parte hearing.

Exhibit A

2019-GEN-014-00

b) Any written opposition to an ex parte application must be electronically filed by 8:30 a.m. the day of the ex parte hearing. A printed courtesy copy of any opposition to an ex parte application must be provided to the court the day of the ex parte hearing.

9) PRINTED COURTESY COPIES

a) For any filing electronically filed two or fewer days before the hearing, a courtesy copy must be delivered to the courtroom by 4:30 p.m. the same business day the document is efiled. If the efiling is submitted after 4:30 p.m., the courtesy copy must be delivered to the courtroom by 10:00 a.m. the next business day.

b) Regardless of the time of electronic filing, a printed courtesy copy (along with proof of electronic submission) is required for the following documents:

   i)   Any printed document required pursuant to a Standing or General Order;

   ii)  Pleadings and motions (including attachments such as declarations and exhibits) of 26 pages or more;

   iii) Pleadings and motions that include points and authorities;

   iv)  Demurrers;

   v)   Anti-SLAPP filings, pursuant to Code of Civil Procedure section 425.16;

   vi)  Motions for Summary Judgment/Adjudication; and

   vii) Motions to Compel Further Discovery.

c) Nothing in this General Order precludes a Judicial Officer from requesting a courtesy copy of additional documents. Courtroom specific courtesy copy guidelines can be found at www.lacourt.org on the Civil webpage under "Courtroom Information."

10) WAIVER OF FEES AND COSTS FOR ELECTRONICALLY FILED DOCUMENTS

a) Fees and costs associated with electronic filing must be waived for any litigant who has received a fee waiver. (California Rules of Court, rules 2.253(b)(), 2.258(b), Code Civ. Proc. § 1010.6(d)(2).)

b) Fee waiver applications for waiver of court fees and costs pursuant to Code of Civil Procedure section 1010.6, subdivision (b)(6), and California Rules of Court, rule 2.252(f), may be electronically filed in any authorized action or proceeding.

Exhibit A

2019-GEN-014-00

11) SIGNATURES ON ELECTRONIC FILING

For purposes of this General Order, all electronic filings must be in compliance with California Rules of Court, rule 2.257. This General Order applies to documents filed within the Civil Division of the Los Angeles County Superior Court.

This First Amended General Order supersedes any previous order related to electronic filing, and is effective immediately, and is to remain in effect until otherwise ordered by the Civil Supervising Judge and/or Presiding Judge.

DATED: May 3, 2019



KEVIN C. BRAZILE
Presiding Judge

7

Exhibit A

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California County of Los Angeles**



**Los Angeles County Bar Association Litigation Section**

**Los Angeles County Bar Association Labor and Employment Law Section**



**Consumer Attorneys Association of Los Angeles**



**Southern California Defense Counsel**



**Association of Business Trial Lawyers**



**California Employment Lawyers Association**

LACIV 230 (NEW)
LASC Approved 4-11
For Optional Use

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◇Los Angeles County Bar Association Litigation Section◇

◇ Los Angeles County Bar Association Labor and Employment Law Section◇

◇Consumer Attorneys Association of Los Angeles◇

◇Southern California Defense Counsel◇

◇Association of Business Trial Lawyers◇

◇California Employment Lawyers Association◇

Exhibit A

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:                    FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES | |
|---|---|
| COURTHOUSE ADDRESS: | |
| PLAINTIFF: | |
| DEFENDANT: | |

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

This stipulation is intended to provide a fast and informal resolution of discovery issues
through limited paperwork and an informal conference with the Court to aid in the
resolution of the issues.

The parties agree that:

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless
   the moving party first makes a written request for an Informal Discovery Conference pursuant
   to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties
   and determine whether it can be resolved informally. Nothing set forth herein will preclude a
   party from making a record at the conclusion of an Informal Discovery Conference, either
   orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be
   presented, a party may request an Informal Discovery Conference pursuant to the following
   procedures:

   a. The party requesting the Informal Discovery Conference will:

      i.   File a Request for Informal Discovery Conference with the clerk's office on the
           approved form (copy attached) and deliver a courtesy, conformed copy to the
           assigned department;

      ii.  Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service
           that ensures that the opposing party receives the Request for Informal Discovery
           Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i.   Also be filed on the approved form (copy attached);

      ii.  Include a brief summary of why the requested relief should be denied;

LACIV 036 (new)
LASC Approved 04/11            STIPULATION – DISCOVERY RESOLUTION
For Optional Use                                                                    Page 1 of 3

Exhibit A

| SHORT TITLE | CASE NUMBER |
|---|---|
| | |

    iii.   Be filed within two (2) court days of receipt of the Request; and

    iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

  c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

  d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

  e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4. If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5. The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6. Nothing herein will preclude any party from applying ex parte for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7. Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

Exhibit A

| SHORT TITLE | CASE NUMBER |
|---|---|
|  |  |

**The following parties stipulate:**

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

Date: _____

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR PLAINTIFF)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR _____)

➢ _____
(ATTORNEY FOR _____)

➢ _____
(ATTORNEY FOR _____)

Exhibit A

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:                        FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – EARLY ORGANIZATIONAL MEETING | CASE NUMBER: |
|---|---|

This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.

The parties agree that:

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following:*

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

Exhibit A

| SHORT TITLE | CASE NUMBER |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

    h.  Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

    i.  Whether the case is suitable for the Expedited Jury Trial procedures (see information at *www.lacourt.org* under "*Civil*" and then under "*General Information*").

2.    The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at *www.lacourt.org* under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3.    The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.    References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:
_____
(TYPE OR PRINT NAME)

                                ➢
_____
(ATTORNEY FOR PLAINTIFF)

Date:
_____
(TYPE OR PRINT NAME)

                                  ➢
_____
(ATTORNEY FOR DEFENDANT)

Date:
_____
(TYPE OR PRINT NAME)

                                  ➢
_____
(ATTORNEY FOR DEFENDANT)

Date:
_____
(TYPE OR PRINT NAME)

                                  ➢
_____
(ATTORNEY FOR DEFENDANT)

Date:
_____
(TYPE OR PRINT NAME)

                                  ➢
_____
(ATTORNEY FOR _____)

Date:
_____
(TYPE OR PRINT NAME)

                                  ➢
_____
(ATTORNEY FOR _____)

Exhibit A

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: FAX NO. (Optional): E-MAIL ADDRESS (Optional): ATTORNEY FOR (Name): | | |

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT.

| INFORMAL DISCOVERY CONFERENCE (pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:
   - ☐ Request for Informal Discovery Conference
   - ☐ Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. For a Request for Informal Discovery Conference, briefly describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, briefly describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.

LACIV 094 (new)
LASC Approved 04/11
For Optional Use

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

Exhibit A

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| | | |

TELEPHONE NO.:                          FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER |
|---|---|

This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.

The parties agree that:

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

Exhibit A

| SHORT TITLE | CASE NUMBER |
|---|---|
| | |

**The following parties stipulate:**

Date:

_____        ⅀ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR PLAINTIFF)

Date:

_____        ⅀ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____        ⅀ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____        ⅀ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____        ⅀ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

Date:

_____        ⅀ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

Date:

_____        ⅀ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

**THE COURT SO ORDERS.**

Date:    _____        _____
                                                                              JUDICIAL OFFICER

Exhibit A



# Superior Court of California, County of Los Angeles

> ## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE
>
> **THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**
>
> **CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

## What is ADR?
ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration, and settlement conferences. When ADR is done by phone, videoconference or computer, it may be called Online Dispute Resolution (ODR). These alternatives to litigation and trial are described below.

## Advantages of ADR
- **Saves Time:** ADR is faster than going to trial.
- **Saves Money:** Parties can save on court costs, attorney's fees, and witness fees.
- **Keeps Control** (with the parties): Parties choose their ADR process and provider for voluntary ADR.
- **Reduces Stress/Protects Privacy:** ADR is done outside the courtroom, in private offices, by phone or online.

## Disadvantages of ADR
- **Costs:** If the parties do not resolve their dispute, they may have to pay for ADR and litigation and trial.
- **No Public Trial:** ADR does not provide a public trial or a decision by a judge or jury.

## Main Types of ADR:

1. **Negotiation:** Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. **Mediation:** In mediation, a neutral mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all.  Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

   **Mediation may be appropriate when the parties**
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

   **Mediation may _not_ be appropriate when the parties**
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

Exhibit A

**How to arrange mediation in Los Angeles County**

Mediation for civil cases is voluntary and parties may select any mediator they wish. Options include:

a. **The Civil Mediation Vendor Resource List**
   If all parties agree to mediation, they may contact these organizations to request a "Resource List Mediation" for mediation at reduced cost or no cost (for selected cases):

   • **ADR Services, Inc.** Case Manager patricia@adrservices.com (310) 201-0010 (Ext. 261)
   • **JAMS, Inc.** Senior Case Manager mbinder@jamsadr.com (310) 309-6204
   • **Mediation Center of Los Angeles (MCLA)** Program Manager info@mediationLA.org (833) 476-9145
     ○ Only MCLA provides mediation in person, by phone and by videoconference.

   These organizations cannot accept every case and they may decline cases at their discretion.
   Visit www.lacourt.org/ADR.Res.List for important information and FAQs before contacting them.
   NOTE: This program does not accept family law, probate, or small claims cases.

b. **Los Angeles County Dispute Resolution Programs**
   https://wdacs.lacounty.gov/programs/drp/
     • Small claims, unlawful detainers (evictions) and, at the Spring Street Courthouse, limited civil:
       ○ Free, day-of-trial mediations at the courthouse. No appointment needed.
       ○ Free or low-cost mediations before the day of trial.
       ○ For free or low-cost Online Dispute Resolution (ODR) by phone or computer before the day of trial visit
         http://www.lacourt.org/division/smallclaims/pdf/OnlineDisputeResolutionFlyer-EngSpan.pdf

c. **Mediators and ADR and Bar organizations** that provide mediation may be found on the internet.

3. **Arbitration:** Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision. For more information about arbitration, visit **http://www.courts.ca.gov/programs-adr.htm**

4. **Mandatory Settlement Conferences (MSC):** MSCs are ordered by the Court and are often held close to the trial date or on the day of trial. The parties and their attorneys meet with a judge or settlement officer who does not make a decision but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For information about the Court's MSC programs for civil cases, visit **http://www.lacourt.org/division/civil/CI0047.aspx**

**Los Angeles Superior Court ADR website: http://www.lacourt.org/division/civil/CI0109.aspx**
**For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm**

LASC CIV 271 Rev. 01/20
For Mandatory Use

2

Exhibit A